**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| UNITED CONSTRUCTION ENT. CO. OF ST. LOUIS, INC., and AMERISURE, INC., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>) NO.10-CV-81-WDS |
| AMERICAN CONTRACTORS INSURANCE GROUP, INC., | )<br>)<br>) |
| Defendant. | )<br>)<br>) |

**MEMORANDUM AND ORDER**

**STIEHL, District Judge:**

Before the Court is plaintiffs' motion for summary judgment (Doc. 23), to which defendant has filed a response (Doc. 29) and plaintiffs a reply (Doc. 33). Also before the Court is defendant's cross-motion for summary judgment (Doc. 28), to which plaintiffs have filed a response (Doc. 34) and defendant a reply (Doc. 35).

**I. BACKGROUND**

This action stems from two contracts: a construction subcontract between general contractor United Construction Ent. Co. of St. Louis, Inc. ("United") and subcontractor Builder's Bloc Contracting Co., Inc. ("Builder's Bloc") and a commercial general liability ("CGL") insurance policy purchased by Builder's Bloc from defendant American Contractors Insurance Company Risk Retention Group ("ACIG").[1] Plaintiffs United and Amerisure Inc. and defendant

---
[1] The initial declaratory judgment filing improperly named American Contractors Insurance Group, Inc. as the defendant. Subsequently, American Contractors Insurance Company Risk Retention Group agreed to be bound by the decisions rendered in this matter.

ACIG filed cross-motions for summary judgment requesting this Court to determine their rights and obligations under the CGL policy as that policy pertains to claims alleged against plaintiff United in a related case, *Builder's Bloc Contracting Co. v. United Construction Ent. Co. of St. Louis, Inc.*, currently pending in the Circuit Court of the Twentieth Judicial Circuit, Monroe County, Illinois, 09-L-23.

Under the subcontract between plaintiff United and Builder's Bloc, Builder's Bloc was to construct a staircase at a jobsite, in Waterloo, Illinois. The subcontract provided that Builder's Bloc would provide the labor and equipment required to construct the staircase according to design documents furnished to plaintiff United and given to Builder's Bloc. The subcontract specified that Builder's Bloc was not providing any design services as part of its work and did not assume any risk in respect to defects, deficiencies, errors, and/or omissions contained within the design documents.

Pursuant to the subcontract, Builder's Bloc obtained a CGL policy from defendant ACIG and named plaintiff United as an additional insured. The CGL policy provided that additional insureds, like plaintiff United, would receive coverage under limited circumstances. After construction was complete, the staircase built by Builder's Bloc based on the design documents provided by plaintiff United collapsed. David Lavely ("Lavely") and others were injured. Lavely asserted a claim against Builder's Bloc for its purported negligence in building the staircase. Builder's Bloc and ACIG settled Lavely's claim in full for the sum of $500,000. Builder's Bloc paid $250,000, the amount of its deductible pursuant to the terms of the Policy.

Following the settlement, Builder's Bloc sued plaintiff United, as well as the architect and structural engineer who worked on the staircase project, seeking contribution in an amount

corresponding to their share of liability for Lavely's injuries. Builder's Bloc alleges that plaintiff United engaged in negligent acts related to the inadequate and incomplete design of the staircase.

Plaintiffs United and Amerisure, Inc. filed their original complaint in the Circuit Court of the Twentieth Judicial Circuit, Monroe County, Illinois, 09-MR-58, seeking a declaratory judgment against defendant ACIG. Defendant ACIG removed the case to this Court pursuant to 28 U.S.C. § 1332.

In their respective motions, plaintiffs and defendant seek summary judgment on the issue of whether defendant ACIG has a duty to defend plaintiffs for the allegations contained in Builder's Bloc's underlying complaint against plaintiff United. Plaintiffs allege that because plaintiff United is named as an additional insured under the CGL policy purchased by Builder's Bloc, defendant ACIG has a duty to defend plaintiff United in the pending litigation. Defendant ACIG alleges that the underlying lawsuit filed against plaintiff United by Builder's Bloc seeks recovery from plaintiff United for liability caused by plaintiff United's independent, negligent actions or omissions and not for vicarious liability caused by acts or omissions of Builder's Bloc.

Under the terms of the CGL policy, plaintiff United is not an additional insured and thus defendant ACIG asserts it does not have a duty to defend plaintiff United in the pending litigation with Builder's Bloc. Specifically, defendant ACIG alleges that Builder's Bloc is seeking contribution from plaintiff United for the staircase design documents furnished to Builder's Bloc by United.

## II. ANALYSIS

### A. Choice of Law Issue

A federal district court sitting in diversity looks to the conflict-of-laws rules in the state jurisdiction in which it sits in order to choose the substantive law applicable to the case. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009). Where an insurance policy does not contain an express choice of law provision, Illinois choice of law rules determine the applicable law. *Westchester Fire Ins. Co. v. G. Heileman Brewing Co.*, 747 N.E.2d 955, 961 (Ill. App. Ct. 2001). In Illinois, a choice of law determination is only required where a difference in the applicable state laws will make a difference in the outcome. *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 898 (Ill. 2007).

Under both Illinois and Missouri laws, the interpretation of an insurance contract is a question of law that may be addressed in a motion for summary judgment. *Nichols v. Certain Underwriters at Lloyd's London*, 771 N.E.2d 595, 599 (Ill. App. Ct. 2002); *D.R. Sherry Constr., Ltd. v. Am. Fam. Mut. Ins. Co.*, 316 S.W.3d 899, 902 (Mo. 2010). An insurer's duty to defend is broader than its duty to indemnify. *Country Mut. Ins. Co. v. Carr*, 867 N.E.2d 1157, 1160 (Ill. App. Ct. 2007); *McCormack Baron Mgmt. Servs., Inc. v. Am. Guarantee & Liability Ins. Co.*, 989 S.W.2d 168, 170 (Mo. 1999). Also, under Illinois and Missouri laws, where the facts alleged in the underlying complaint give rise to a claim potentially within the policy's coverage, the insurer has a duty to defend. *Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1016 (Ill. 2010); *McCormack Baron*, 989 S.W.2d at 170. If the facts alleged in the complaint give rise to a claim within–or potentially within–the policy's coverage, the insurer has a duty to defend. *Pekin Ins.*

4

*Co.*, 930 N.E.2d at 1016–17; *Am. Sts. Ins. Co. v. Herman C. Kemper Const. Co.*, 71 S.W.3d 232, 236 (Mo. Ct. App. 2002). The trial court may look beyond the underlying complaint to the underlying contract so long as the court does not determine an issue critical to the underlying action. *Pekin Ins. Co.*, 930 N.E.2d at 1020; *see also Union Pac. R.R. Co. v. Am. Fam. Mut. Ins. Co.*, 2987 S.W.2d 340, 345 (Mo. Ct. App. 1998). Therefore, because the outcome would be the same under Illinois or Missouri law, this issue is properly resolved under Illinois law. *See Townsend*, 987 N.E.2d at 983.

**B.   Summary Judgment Standard**

A district court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment should only be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Highlands Ins. Co. v. Lewis Rail Serv. Co.*, 10 F.3d 1247, 1249 (7th Cir. 1993). A genuine issue of material fact exists if based on the evidence, a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In insurance coverage cases, where the parties file cross-motions for summary judgment, the parties acknowledge that no material questions of fact exist, and thus, only an issue of law regarding the interpretation of the policy is present. *Am. Fam. Mut. Ins. Co. v. Fisher Dev., Inc.*, 909 N.E.2d 274, 278 (Ill. App.Ct.2009). The court evaluates each party's motion separately and on its own merits. *U.S. Fidelity & Guarantee Co. v. Shorenstein Realty Serv., L.P.*, 700 F. Supp. 2d 1003, 1005 (N.D. Ill. 2010) (citing *Taylor Chrysler Dodge, Inc. v. Universal Underwriters*

*Ins. Co.*, No. 08 C 4522, 2009 U.S. Dist. LEXIS 91187, 2009 WL 3187234, at *3 (N.D. Ill. Sept. 30, 2009).

**C. Duty to Defend**

When determining the scope of coverage within an insurance policy, the "court looks to the policy as a whole, the risk undertaken, the subject matter and the purpose of the contract." *Fisher Dev., Inc.*, 909 N.E.2d at 278 (citing *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204 (Ill. 1992). The court seeks to "give effect to the parties' intent, which is to be discerned from the contract language." *Virginia Surety Co. v. Northern Ins.*, 866 N.E.2d 149, 153,(Ill. 2007) (citing *Central Illinois Light Co. v. Home Insurance Co.*, 821 N.E.2d 206, 290 (2004). Where the contract language is unambiguous, it should be given its plain and ordinary meaning. *Virginia Surety Co.*, 866 N.E.2d at 153. If, however, the contract language is ambiguous, the terms will be construed in favor of the insured and against the insurer. *Fisher Dev., Inc.*, 909 N.E.2d at 279.

Whether an ambiguity exists is a question of law. *Cent. Ill. Pub. Serv. Co. v. Am. Empire Surplus Lines Ins. Co.*, 642 N.E.2d 723, 726(Ill. App. Ct. 1994). Language is ambiguous where it is susceptible to reasonable, alternate interpretations. *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 314 (Ill. 2006); *Smith v. Neumann*, 682 N.E.2d 1245, 1250 (Ill. App. Ct. 1997). However, an ambiguity does not merely arise because the parties suggest creative interpretations of policy language. *Valley Forge Ins. Co.*, 860 N.E.2d at 314; *Smith*, 682 N.E.2d at 1251.

To determine whether an insurer has a duty to defend its insured, this Court must look to the allegations of the underlying complaint and the CGL policy. *See, Amerisure Mut. Ins. Co. v*

*Microplastics, Inc.*, 622 F.3d 806, 810 (7th Cir. 2010) (applying Illinois law); *Fisher Dev., Inc.*, 909 N.E.2d at 279 (citing *Dixon Distributing Co. v. Hanover Ins. Co.*, 641 N.E.2d 395(1994)). Where the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer has a duty to defend. *Microplastics, Inc.*, 622 F.3d at 810.

However, an insurer does not have a duty to defend "unless the underlying claim contains *explicit* factual allegations that potentially fall within the policy coverage." *Microplastics, Inc.*, 622 F.3d at 810. The insurer has the burden of establishing that the underlying claim falls within an exclusion to the policy and may decline to defend its insured where "from the face of the complaint, the allegations are clearly outside the bounds of the policy coverage." *Nat'l Case Co. v. McFatridge*, 604 F.3d 335, 338 (7th Cir. 2010) (applying Illinois law). Where the insurer presents a provision within the policy as grounds for excluding coverage, the court "reviews the applicability of the provision to ensure it is "'clear and free from doubt' that the policy's exclusion prevents coverage." *Fisher Dev., Inc.*, 909 N.E.2d at 279(quotation omitted).

### III. A<u>CIG'S CGL INSURANCE POLICY</u>

Because this case turns on whether plaintiff United is an "additional insured" for purposes of the underlying lawsuit with Builder's Bloc under defendant's CGL policy, this Court will address that provision first. When looking at the provisions of an insurance policy to determine coverage, the Court takes into account the "type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract." *Pekin Ins. Co.*, 935 N.E.2d at1062 . The Court may look to the underlying contract to determine an insurer's duty to defend, so long as the court does not determine an issue critical to the underlying action. *Id.* at 1062-63. The

7

provision defining who is an additional insured under the CGL policy states, "The person or organization does not qualify as an additional insured with respect to the independent acts or omissions of such person or organization. The person or organization is only an additional insured with respect to liability caused by 'your work' for that additional insured." (Doc. 25-4). "Your work" is defined as "[w]ork or operations performed by you or on your behalf; and [m]aterials, parts or equipment furnished in connection with such work or operations." (Doc. 25-4). The subcontract does not define independent acts or omissions.

Under Illinois law, where an insurance policy does not provide a definition for a term in the plan, the court applies the "plain, ordinary, and popular meaning of the term." *Gillen v. State Farm Mut. Auto Ins. Co.*, 830 N.E.2d 575, 582 (Ill. 2005) (citing *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204 (Ill. 1992)). Black's Law Dictionary Eighth Edition, defines "independent" as, "[n]ot subject to the control or influence of another; Not associated with another entity; Not dependent or contingent on something else." Black's Law Dictionary (8th ed. 2004).

The subcontract between plaintiff United and Builder's Bloc expressly stated "The parties agree that Subcontractor is not providing design services as part of its work." (Doc. 25-7). Because plaintiff United and Builder's Bloc agreed that Builder's Bloc would not provide any design services, the subcontract effectively limited the scope of the definition of "your work" under the CGL policy to exclude any design services and the corresponding design documents.

Under the subcontract between plaintiff United and Builder's Bloc, Builder's Bloc was to construct the staircase according to the specifications given to them by United, and further,

8

Builder's Bloc had no authority to deviate from the plans as given to them by United. United obtaining and utilizing faulty design plans was not dependent or contingent upon Builder's Bloc's contract or Builder's Bloc's work product. In fact, had Builder's Bloc deviated from the design plans as given to them by United, they could have been found in breach of contract.

Accordingly, this Court **FINDS** that design services constituted "independent acts" under the CGL policy, and therefore, this Court **FINDS** that design services do not constitute "your work."

### A.  Builder's Bloc's Complaint

In the underlying complaint, Builder's Bloc alleged three causes of action against plaintiff United: 1) Ordinary Negligence; 2) Breach of Contract; and 3) Quantum Meruit. Neither party has raised the issue of whether defendant has a duty to defend plaintiff United on the Breach of Contract and Quantum Meruit claims. Plaintiffs argue that any portion of liability attributable to plaintiff United for Lavely's injuries was caused *solely* by Builder's Bloc's work, installation and construction of the stairwell. (Doc. 24). Plaintiffs further allege that "the acts alleged by Builder's Bloc are *all* dependent on its failure to construct the stairway correctly." (Doc. 24) (emphasis added).

In Count I, for Ordinary Negligence, Builder's Bloc alleged the following:

> United was guilty of one or more of the following careless and negligent acts or omissions in its role as general contractor for the project, which, together or separately, were a proximate cause of the Staircase collapse and the injuries to Mr. Lavely:
> (a)  Provided an incomplete and inadequate *design* to BB that was unsuitable for constructing the Staircase.
> (b)  Failed to appreciate that the *design* provided to BB for the Staircase was incomplete, inadequate, and unsuitable for construction;
> (c)  Failed to provide additional information or clarification on the *design* provided, after notice by BB that it was incomplete, inadequate, and unsuitable for construction.

(d) Instructed BB to construct the Staircase as shown on the *design*, despite the incomplete and inadequate nature of the *design* provided to BB for the Staircase, including a failure in the *design* to provide for an adequate and safe means for fastening the landing to the upper flight of stairs of the Staircase, and despite having actual or constructive knowledge that doing so would render the Staircase inadequate and unsafe;

(e) Instructed BB to install the Staircase as shown on the *design* which necessitated the improper installation of risers in the Staircase despite having actual or constructive knowledge that doing so would render the Staircase inadequate and unsafe;

(f) Instructed BB to install the Staircase as shown on the *design*, which required an additional 2 x 12 extender for the purpose of fastening the upper flight to the landing of the Staircase, despite having actual or constructive knowledge that the Staircase as *designed* was inadequate and unsafe;

(g) Instructed BB to install the Staircase as shown on the *design*, which did not specify pilasters, joist hangers and angled cuts into the posts to support the 2 x 12s and extenders, so that as a result, the upper flight of the Staircase was supported only by nails which are incapable of supporting weight, thus resulting in a Staircase that was structurally inadequate and unsafe.

(h) Failed to conduct an adequate inspection of the completed Staircase, which would have disclosed the inadequate and unsafe conditions of the Staircase.

(i) Accepted the Staircase as constructed by BB and made the Staircase available for access to other contractors until completion of the Facility, despite inadequacies in the Staircase as constructed that were visible upon inspection (patent).

(j) Upon completion of the Facility, turned the Facility and Staircase over to Lutheran for use by Lutheran and its invitees despite inadequacies in the Staircase as constructed that were visible upon inspection (patent).

(k) Was otherwise careless and negligent.

(Doc. 25-6) (emphasis added).

The underlying petition stated Builder's block is seeking contribution against United in "an amount commensurate with United's *pro rata* share" under the Joint Tortfeasor Contribution Act. (740 ILCS 100/2 et seq.; Doc. 25-6). Under the Joint Tortfeasor Contribution Act:

(a) Except as otherwise provided in this Act, where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them, even though judgment has not been entered against any or all of them.

(b) The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share. No tortfeasor is liable to

make contribution beyond his own pro rata share of the common liability." (740 ILCS 100/2 et seq.).

What portion, if any, of the common liability United is liable to Builder's Bloc for is not for this Court to decide. At issue is whether defendant has a duty to defend United in this underlying suit, regardless of whether or not the underlying suit has merit. *See U.S. Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 930 (Ill. 1991).

By settling the initial claim with Lavely, Builder's Bloc and defendant assumed responsibility for any potential liability for Builder's Bloc and plaintiff United as an additional insured. Under the subcontract executed between plaintiff United and Builder's Bloc, Builder's Bloc was only "responsible for work [they] performed per plans" [sic.]. (Doc. 25-5). Thus, Builder's Bloc is seeking recovery from United for United's share of the common liability which Builder's Bloc paid in excess of its share of common liability. Simply put, Builder's Bloc is seeking recovery for the damages, if any, if United supplied a defective design and Builder's Bloc relied on that design.

Builder's Bloc is entitled, under the Contribution Act, to seek contribution from United for any portion of the common liability for which Builder's Block is not responsible. To hold otherwise would allow United to be shift responsibility for its own independent acts of negligence under the terms of the subcontract, which is strictly prohibited under the Construction Contract Indemnification for Negligence Act. *See* 740 ILCS 35/0.01 et seq.

This Court **FINDS** as a matter of law, therefore, that defendant does not have a duty to defend plaintiff United.

## CONCLUSION

Based on the foregoing, plaintiffs' motion for summary judgment is **DENIED** and defendant's motion for summary judgment is **GRANTED**. Judgment is entered in favor of defendant American Contractors Insurance Group, Inc., and against plaintiffs United Construction Ent. Co. of St. Louis and American Contractors Insurance Company Risk Retention Group, Inc. on all claims. Each party shall bear its own costs.

The Clerk of the Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATE: <u>31 March, 2011</u>**

                                          **<u>/s/  WILLIAM D. STIEHL</u>**
                                             **DISTRICT JUDGE**